IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TRACY M. BERRY, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-15-434-RAW-KEW
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Tracy M. Berry (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 4, 1970 and was 44 years old at the time of the ALJ's decision.  Claimant completed her high school education.  Claimant has worked in the past as a loan officer. Claimant alleges an inability to work beginning July 6, 2010 due to limitations resulting from generalized anxiety, panic disorder, major depressive disorder, fibromyalgia, peripheral neuropathy, urinary incontinence, cervical disc disease with radiculopathy,

psoriasis, right shoulder impingement, and lumbar/thoracic syndrome.

## Procedural History

On May 11, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 1, 2014, Administrative Law Judge Bernard Porter ("ALJ") conducted a hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On May 6, 2014, the ALJ issued an unfavorable decision. On September 10, 2015, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) his RFC assessment since he did not properly evaluate the opinion evidence;

4

and (2) failing to perform a proper credibility assessment.

## RFC Assessment

In his decision, the ALJ determined Claimant suffered from the severe impairments of generalized anxiety disorder with panic disorder, major depressive disorder, fibromyalgia, peripheral neuropathy, urinary incontinence, cervical disc disease with radiculopathy, psoriasis, right shoulder impingement syndrome, and lumbar/thoracic syndrome. (Tr. 275). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, he found Claimant could lift and/or carry 20 pounds occasionally and ten pounds frequently, was able to stand or walk for six hours in an eight hour workday, and was able to sit for six hours in an eight hour workday. (Tr. 282). The ALJ also determined Claimant could push/pull as much as she could lift and carry. Claimant could occasionally use foot and hand controls, was limited to no overhead reaching and frequent fingering, handling, and feeling. Claimant could occasionally climb ramps and stairs but never climb ropes, ladders, and scaffolds or crawl. Claimant could frequently balance and stoop and occasionally crouch and kneel. She must avoid exposure to unprotected heights, moving mechanical parts and temperature extremes. Claimant required a sit/stand option that allows for a change in position at least every 30 minutes. Claimant

5

could perform simple tasks and make simple work related decisions, can have frequent interaction with supervisors, co-workers, and the public. Time off task would be accommodated by normal breaks. (Tr. 283).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of courier, bottling line attendant, and small product assembler, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 292). As a result, the ALJ found Claimant was not disabled from July 6, 2010 through the date of the decision. (Tr. 293).

Claimant contends the ALJ failed to properly evaluate the opinion evidence in the record. Dr. Thomas Cheyne attended Claimant on September 1, 2009 and diagnosed her with chronic cervical radiculopathy. (Tr. 812). He noted Claimant was complaining of chronic cervical pain and upper thoracic discomfort with aching into her arms bilaterally. An MRI scan two years prior was negative. Dr. Cheyne found Claimant was mildly tender to palpation in the posterior aspect of the neck and upper thoracic region. She had approximately 20% limitation of range of motion of the head and neck in all directions. Claimant had normal sensory and motor function in the upper extremities. Her deep tendon reflexes were 1+ and equal bilaterally. X-rays of the cervical spine indicate

6

straightening of the normal cervical lordosis, but were otherwise within normal limits. Dr. Cheyne ordered a repeat MRI. (Tr. 812).

On December 10, 2009, Dr. Cheyne wrote a note for Claimant stating that she could return to work on January 11, 2010. He restricted her, however, to four hours per day with a 15 pound weight limit, no repetitive reaching or lifting, no work above shoulder level, and a requirement that she change positions frequently (every 10 to 15 minutes) and no driving. (Tr. 563).

On March 3, 2010, Dr. Cheyne attended Claimant, noting definite improvement but that Claimant continued to have a little discomfort. He stated that he would authorize Claimant's return to work as a teller supervisor or brand manager at Arvest Bank except that she could not lift mor than 15 pounds, needs to be allowed to use a headset, and needs to be allowed to sit occasionally as needed. (Tr. 570).

On July 9, 2010, Claimant returned to Dr. Cheyne complaining of another flare up of her neck. She told him that her job aggravated her neck and she quit her job. No change in her physical examination was noted. Dr. Cheyne had Claimant continue at light activity and using heat twice daily. He scheduled Claimant for physical therapy three times weekly over a month. He believed not working for awhile would be very beneficial to her. (Tr. 572).

The ALJ gave Dr. Cheyne's opinion "diminished weight, as it is

7

not fully supported by nor is it consistent with the medical evidence of record as a whole." (Tr. 287). He based this weight on (1) Dr. Cheyne finding that x-rays of the cervical spine were essentially normal; (2) MRI indicated a "very mild" disc bulge at C5-C6 without spinal or forminal stenosis with Dr. Cheyne recommending injections rather than surgery; (3) Dr. Cheyne "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and uncritically seemed to accept as true most, if not all, of what the claimant reported" and the ALJ questioned Claimant's credibility; and (4) Dr. Cheyne stated he would write a note showing Claimant could work with limitations on lifting to 15 pounds, use of a headset, and a requirement that she sit occasionally. In his final note, however, he added a recommendation that Claimant not drive despite the fact Claimant drives. (Tr. 287-88).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

8

evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers

9

the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

In September of 2009, x-rays of Claimant's cervical spine were "essentially normal." (Tr. 814). An MRI taken in the same time frame indicated a "very mild disc bulge without spinal or foraminal stenosis" at C5-C6. There was no evidence of disc herniation. (Tr. 811). Upon review of these results, Dr. Cheyne found that Claimant "certainly does not appear to have anything of a surgical nature." He prescribed Mobic, home exercise, and heat. (Tr. 810). Dr. Robert Fisher did provide Claimant with a cervical epidural steroid injection. (Tr. 809).

Claimant also had only a slight degenerative endplate change but otherwise negative lumbar spine in March of 2012. (Tr. 733). Similarly, Claimant's thoracic spine was unremarkable and her shoulder series of x-rays were negative. (Tr. 731). In essence, nothing in the medical record supports the level of limitation found by Dr. Cheyne. The ALJ did nor err in discounting this opinion.

Claimant also challenges the ALJ's rejection of the opinion of Frank Burton, a physical therapist, from August 11, 2010. Mr.

Burton authored a "to whom it may concern" letter stating that Claimant "suffered from the effects of a cervical herniated nucleus pulposus, or slipped disc in her lower cervical spine." He opined that the postural stresses caused from sitting for prolonged periods and looking down at a computer and speaking on the telephone would cause her pain and limit her functioning in that work environment. (Tr. 583).

The ALJ gave this opinion "little weight" because it was not fully supported by the medical record. (Tr. 288). He found Claimant could run errands after physical therapy, had reported minimal or no pain in her neck, had undergone testing of her spine which revealed only slight or minimal changes, and the last physical therapy session before the letter was written in December of 2009 indicated Claimant had been pain free the previous week. Id. This Court agrees with the ALJ that little objective support exists in the record for Mr. Burton's opinion. Most importantly, the opinion appears to have been based upon faulty medical information as no evidence is presented in the record indicating Claimant suffered from a "slipped disc."

Claimant next takes issue with the ALJ's consideration of the opinion of Dr. B. Don Schumpert. Dr. Schumpert completed a Medical Source Statement on May 24, 2012, stating Claimant suffered from chronic cervical radiculopathy. He determined Claimant could reach,

11

handle, and grasp but could not push, pull, or engage in fine manipulation. She could occasionally bend, squat, stoop, and crouch but could not crawl, climb, reach above her head, or kneel. Dr. Schumpert noted she would require unscheduled breaks in an eight hour workday, would need to lie down at unpredictable times to rest, would suffer from symptoms and pain severe enough to interfere with attention and concentration and would affect her ability to tolerate work stress. On average, Claimant would be likely be absent from work as a result of her impairments more than four days per month. Claimant would also need to elevate her feet periodically during the day and would have to have a sit/stand/walk option. Dr. Schumpert also found Claimant could not look down, turn her head right or left, or look up. She would have to have ready access to a restroom and would sometimes need to take unscheduled breaks during an eight hour work shift. (Tr. 700-01).

Again, the ALJ determined Dr. Schumpert's opinion was entitled to "diminished weight" as not fully supported by the medical record. (Tr. 288). He found that Dr. Schumpert had seen Claimant five months prior to the issuance of the statement but for sinusitis. She denied difficulty urinating or any musculoskeletal pain and numbness or tingling in the arms and legs. No other urological problems were reported after Claimant underwent bladder repair surgery. Id.

12

The ALJ also noted that the next visit after the date of the statement with Dr. Schumpert showed no problems with urination. As for Claimant's neck problems, the ALJ observed that Claimant sat for over an hour for the hearing and did not have to use the restroom, held her head in a static position and turned her head, and did not have to elevate her feet or lie down. He also found Claimant had driven and engaged in other activities of daily living which were inconsistent with the level of restriction found by Dr. Schumpert in his source statement. (Tr. 289).

It appears a good measure of Dr. Schumpert's listed limitations went well beyond the matters for which he rendered treatment. This inconsistency is certainly within the purview of the ALJ to consider when discounting the opinion evidence. 20 C.F.R. § 404.1527(c)(2)(ii)("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories."). The ALJ appears to have relied upon entirely appropriate factors and inconsistencies in the level of restriction found by Dr. Schumpert and the evidence to reduce the weight given to this opinion. This Court finds no error in the ALJ's assessment.

13

**Credibility Determination**

Claimant also challenges the adequacy of the ALJ's credibility findings. Since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting effects of symptoms in disability claims - what heretofore has been known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL 374186 (July 2, 1996). On remand, the ALJ shall apply the new guidelines under Soc. Sec. R. 16-3p in evaluating Claimant's testimony regarding "subjective symptoms".

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate

review of this decision by the District Court based on such findings.

DATED this 13th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE